UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**05 1057 0**

Civil Action No.:

| | |
|---|---|
| MARJAM SUPPLY COMPANY, INC.<br>　　Plaintiff,<br><br>　　v.<br><br>EVERETT RIKEMAN a/k/a RICK RIKEMAN<br>　　Defendant　　MAGISTRATE JUDGE Alexander | RECEIPT # _____ $250.00<br>VERIFIED COMPLAINT<br>SUMMONS ISSUED ___<br>LOCAL RULE ___<br>WAIVER ___<br>MCF ISSUED ___<br>BY DPTY CLK  M.P.<br>DATE  3/24/05 |

## NATURE OF THE ACTION

1. In this action, Plaintiff seeks injunctive relief and damages against a former employee arising from said employee's violation of a noncompetition agreement and his misappropriation of customer good will generated as an employee of the Plaintiff. Plaintiff seeks a preliminary injunction to prevent the immediate and irreparable harm that will result from Defendant's reliance on customer goodwill and confidential vendor information to divert business from the Plaintiff.

## JURISDICTION AND PARTIES

2. Plaintiff Marjam Supply Company, Inc. ("Marjam") is a corporation duly organized and existing under the laws of the State of New York and has a principle place of business at 20 Rewe Street, Brooklyn, New York.

3. Defendant Everett Rikeman a/k/a Rick Rikeman ("Rikeman") is an individual who resides at 31 Pine Street, Stoneham, Massachusetts.

4. The matter in controversy exceeds, exclusive of interest and costs the sum specified by 28 U.S.C. 1332.

CHARLES F. HOUGHTON
ATTORNEY AT LAW
271 MAIN STREET
SUITE 202
STONEHAM, MA
02180-3580

TEL: 781-438-7444
FAX: 781-438-2078



## CENTRAL ALLEGATIONS

5. Marjam sells a wide variety of lumber, plywood and building materials including highly specialized products to residential and commercial customers.

6. Marjam was founded in 1979 and currently employees over 500 employees at thirteen locations in six states.

## MARJAM'S CUSTOMER GOODWILL

7. The development and enhancement of customer goodwill is a critical factor to Marjam's success.

8. Since its inception and at great expense, Marjam has cultivated relationships with hundreds of customers throughout the Northeast Region of the United States.

9. Due to the highly competitive nature of its industry, Marjam's business model is dependent on the loyalty and repeat business of its valued customers. As such Marjam strives to create individual relationships with each and every customer.

## EMPLOYMENT AND RESIGNATION OF EVERETT RIKEMAN A/K/A RICK RIKEMAN

10. On September 21, 2001 Rikeman began working at Marjam as an inside sales representative.

11. During his more than four years at Marjam, Rikeman developed relationships with customers in and around the areas of Stoneham, Massachusetts, Portsmouth, New Hampshire and Portland, Maine.

12. Rikeman was privy to confidential information regarding customers and vendors including but not limited to individually negotiated pricing levels.

CHARLES F. HOUGHTON

ATTORNEY AT LAW
271 MAIN STREET
SUITE 202
STONEHAM, MA
02180-3580

TEL: 781-438-7444
FAX: 781-438-2078

13. On September 21, 2001, in consideration of his employment with Marjam Rikeman signed an employment agreement with Marjam. In pertinent part the agreement which, is attached hereto as <u>Exhibit A</u>, states:

> The Employee shall not, for a period of one (1) year following termination of employment, for any reason, directly or indirectly, represent or attempt to represent any customer of Employer within a 45 mile radius of the marketing and sales area(s) Employee sold, operated and/or otherwise conducted business for Employer throughout the term of the employment hereunder ("Restricted Area"). Employee further agrees that he shall not compete with the activities of Employer either directly or indirectly as a principal, partner, agent, or Employee of any entity operating a business similar to that which is being conducted by Employer, for a period of one (1) year following his/her termination of employment, for any reason, within the Restricted Area.

14. On Sunday, February 6, 2005 Rikeman resigned from Marjam by sending the electronic message attached hereto as <u>Exhibit B</u> to Marjam's Chief Operating Officer, Mark Buller.

15. Rikeman then failed to report to work on Monday, February 7, 2005 and Tuesday, February 8, 2005.

16. Upon information and belief, prior to resigning from Marjam and without Marjam's knowledge or consent Rikeman took materials from one Marjam customer under the guise of borrowing said materials.

17. That Marjam customer is now seeking remuneration from Marjam for the "borrowed" materials.

CHARLES F. HOUGHTON

ATTORNEY AT LAW
271 MAIN STREET
SUITE 202
STONEHAM, MA
02180-3580

TEL: 781-438-7444
FAX: 781-438-2078

18. Upon information and belief Rikeman immediately began working for Kamco Supply Corp. of Boston ("Kamco"), a direct Marjam competitor with a principal place of business at 181 New Boston Street, Woburn, Massachusetts.

19. Upon information and belief Rikeman immediately began using the customer goodwill he developed while working for Marjam to solicit business for Kamco from Marjam customers.

20. On March 7, 2005 Marjam sent Rikeman the letter attached hereto as <u>Exhibit C</u> reminding him of his obligation not to compete with Marjam and specifically seeking the return of all documents taken from Marjam by Rikeman prior to departure.

21. To date Marjam has not received any response from Rikeman.

22. Upon information and belief, notwithstanding his obligations to Marjam, Rikeman continues to directly compete with Marjam as a Kamco employee, by relying on Marjam's customer goodwill and confidential information..

## COUNT ONE
## BREACH OF CONTRACT

23. Marjam realleges and incorporates by reference in its allegations in Paragraphs 1-20 above.

24. Marjam has fully preformed any obligations to Rikeman under the parties' Agreement.

25. Rikeman has failed to perform his obligations to Marjam under the parties' Agreement.

26. Rikeman's breach of the Agreement presents an immediate threat of irreparable harm to Marjam. In addition, Rikeman has caused or has the potential to cause Marjam damages in excess of $75,000.00 to be determined at trial.

## RELIEF

WHEREFORE, Plaintiff Marjam prays that this Court:

**CHARLES F. HOUGHTON**

ATTORNEY AT LAW
271 MAIN STREET
SUITE 202
STONEHAM, MA
02180-3580

TEL: 781-438-7444
FAX: 781-438-2078

1. Issue its Summons and Order of Notice that Defendant answer this Verified Complaint and appear for a hearing on Marjam's hearing for a Preliminary Injunction at the first available date and time provided by the Court.

2. After a hearing, issue a preliminary injunction enjoining and restraining the Defendant from directly or indirectly competing with Marjam by refraining from (a) contacting prior to February 8, 2006 any Marjam customers with whom Defendant conducted business while a Marjam employee, (b) utilizing confidential information in dealing with Marjam's vendors and (c) order Defendant to return any and all customer lists, customer materials, vendor lists and other Marjam documents in his possession or to which he has access.

3. After trial, enter a permanent injunction in the form as set out in Paragraph 2 above, and award Marjam its damages, attorneys fees, costs and interest pursuant to Count 1 of the Verified Complaint.

4. Award Marjam such other relief as the Court deems just and proper.

Pursuant to Fed. R. Civ. P. 38(b) Marjam hereby demands a trial by jury.

Marjam Supply Company, Inc.

By its Attorneys

*/s/ Charles F. Houghton*
Charles F. Houghton, Esq.
271 Main Street, #202
Stoneham, MA 02180
Phone: (781) 438-7444
Facsimile: (781) 438-2078
BBO #: 241060

CHARLES F. HOUGHTON
ATTORNEY AT LAW
271 MAIN STREET
SUITE 202
STONEHAM, MA
02180-3580

TEL: 781-438-7444
FAX: 781-438-2078

5


Robin Stein, Esq.
271 Main Street, #202
Stoneham, MA 02180
Phone: (781) 438-7444
Facsimile: (781) 438-2078
BBO #: 654829

## VERIFICATION

I, Donald Fradette, hereby depose and state as follows:

1. I am a Regional Manager of the Marjam Supply Company, Inc. the Plaintiff in the above-referenced matter;

2. I have read the Verified Complaint filed herein and, knowing the contents thereof, have found that the allegations of fact set forth therein are based on my own personal knowledge and are true, except as to those allegations based on information and belief which I believe to be true.

Signed under the penalties of perjury on this 21st day of March 2005.

Donald Fradette

CHARLES F. HOUGHTON

ATTORNEY AT LAW
271 MAIN STREET
SUITE 202
STONEHAM, MA
02180-3580

TEL: 781-438-7444
FAX: 781-438-2078

Exhibit A

## MARJAM SUPPLY CO., INC.
## EMPLOYMENT AGREEMENT

THIS AGREEMENT made as of this 21 day of September 2001, by and between MARJAM SUPPLY CO., INC., a New York corporation with its corporate headquarters located at 20 Rewe Street, Brooklyn, New York 11211 ("Employer") and Everett Rileman having an address of ~~Montauk Rd~~ 425 Park Str West No. Reading, MA 01864 ("Employee").

WITNESSETH:

WHEREAS, Employer wishes to employ Employee and Employee desires to enter the employ of Employer pursuant to the terms and conditions set forth herein,

NOW, THEREFORE, in consideration of the foregoing and the terms and conditions hereinafter contained, the parties hereto hereby agree as follows:

1. **Employment.** Employer hereby employs Employee and Employee accepts employment with Employer pursuant to the terms and conditions set forth hereinbelow.

2. **Position, Duties & Term.** (a) Employee shall serve Employer as _Inside Sales_ and shall have such other and further duties as the Employer, through its designated agents, may from time to time determine. Employee shall perform all such duties in good faith and with best efforts as a fiduciary of Employer.

(b) Throughout his/her employment Employee shall devote his/her entire working time, energy, skill and best efforts exclusively to the performance of his/her duties hereunder in a manner which will faithfully and diligently further the business interests of the Employer.

(c) This employment agreement is not for any fixed term, employment hereunder is at will. In this connection, either party may voluntarily terminate this agreement without cause, upon two (2) weeks written notice to the other, except that in the interests of Employer the notice requirement may be reduced to no less than one full work day to permit the parties to carry out an orderly and effective separation. The notice provision shall not apply to terminations for cause.

3. **Compensation.** The Employer shall pay Employee, and Employee agrees to accept from Employer as payment in full for the services to be performed hereunder, the sum of $75000. such sum subject to amendment from time to time, payable no less frequent than bi-weekly.

4. <u>Termination.</u> (a) This agreement shall terminate without cause upon either party giving the other notice as set forth in paragraph 2(c) hereof;

(b) This agreement shall also terminate on the employee's death or disability occurring at any time during the term of employment;

(c) For the purposes of this paragraph 4 termination for "cause" shall include but shall not be limited to:

i. insubordination;

ii. poor work performance;

iii. excessive tardiness;

iv. violation of any terms of this agreement;

v. violation of any terms of the Employee Manual, a copy of which has this day been given to Employee and which Employee acknowledges having received.

5. <u>Confidential and Proprietary Information; Non-Disclosure.</u>
(a) Employee hereby acknowledges and agrees that all information he/she may obtain, possess, or acquire during the term of employment regarding the Employer's operations, activities, vendors and customers, which by way of example only include customer lists, customer sales analyses, client records, price lists, marketing strategies, proposals, orders, supplier and vendor information, inventory, methods of business operation and computer software and hardware ("Confidential Information"), are of a confidential and proprietary nature and are the sole an exclusive property of Employer.

(b) Employee shall not use for his/her personal benefit, or disclose, communicate or divulge to, or use for the direct or indirect benefit of any person, firm, association or company, any Confidential Information referred to in subparagraph (a) above or any information regarding the business methods, business policies, procedures, techniques, research or developmental projects or results, trade secrets, or other knowledge or processes used or developed for use by Employer or any names and addresses of customers, or any data on or relating to past, present and prospective customers or any other Confidential Information relating to or dealing with the business operations or activities of Employer, made known to Employee or learned or acquired by Employee while in the employ of Employer.

(c) Upon termination of his/her relationship with the Employer, Employee agrees shall immediately return all documents, records, files, notes, computer software and data disks, notebooks, equipment, computers and all other repositories of, or containing, confidential information, and all copies thereof, whether by

him/her or others.

(d) The restrictions contained in this agreement include Confidential Information and trade secrets developed by Employee while employed by Employer.

(e) The provisions of this Section shall not terminate upon the termination of Employee's employment, and shall remain binding on Employee thereafter, regardless of the reason for termination.

6. <u>Noncompetition, Trade Secrets.</u> (a) During Employee's employment and for a period of one (1) year thereafter, Employee shall not directly or indirectly solicit or attempt to influence any other employee of Employer to terminate his/her employment with Employer.

(b) The Employee shall not, for a period of one (1) year following termination of employment, for any reason, directly or indirectly, represent or attempt to represent any customer of Employer within a 45 mile radius of the marketing and sales area(s) Employee sold, operated and/or otherwise conducted business for Employer throughout the term of employment hereunder ("Restricted Area"). Employee further agrees that he/she shall not compete with the activities of the Employer either directly or indirectly as a principal, partner, agent, or Employee of any entity operating a business similar to that which is being conducted by the Employer, for a period of one (1) year following his/her termination of employment, for any reason, within the Restricted Area.

7. <u>Enforcement of Provisions.</u> (a) The Employee acknowledges that the restrictions contained in the foregoing paragraphs 5 & 6, in view of the nature of the business in which Employer is engaged, are reasonable and necessary in order to protect the legitimate interests of Employer, and that any violation thereof would result in irreparable injuries to Employer, and that Employee, therefore, acknowledges that, in the event of his/her violation of any of these restrictions, the Employer shall be entitled to obtain from any court of competent jurisdiction, preliminary and permanent injunctive relief as well as damages and an equitable accounting of all earnings, profits and other benefits arising from such violation, which rights shall be cumulative and in addition to any other rights or remedies to which Employer may be entitled.

(b) If the period of time and/or the geographic scope specified in paragraph 6 above should be determined unenforceable following arbitration, as set forth in paragraph 9 hereof, then the parties agree that the arbitrators making such determination shall have the power to reduce the duration and/or areas of such provisions and, in its reduced form, said provision shall then be enforceable.

8. **Arbitration.** Employee agrees that any controversy arising out of or in connection with compensation, employment or termination hereunder shall be settled through mandatory and binding arbitration, by an independent arbitrator(s), pursuant to the terms and rules of arbitration as set forth by the American Arbitration Association. The decision of the arbitrator(s) shall be final. Employee and Employer acknowledge that in agreeing to arbitrate they are waiving their right to have any matter relating to compensation, employment or termination resolved in a court of competent jurisdiction. The losing party in arbitration shall pay all costs of the arbitration. This provision shall survive the termination of this Agreement, regardless of the reason for the termination.

9. **Governing Law.** This agreement shall be in all respects governed by and construed and enforced in accordance with the laws of the State of New York.

10. **Severability.** The invalidity or unenforceability of any provision of this agreement shall not affect the validity or enforceability of any other provision hereof.

11. **No Assignment.** This Agreement and the rights and obligations created hereunder are personal in nature and may not be assigned in whole or in part to anyone.

12. **Entire Agreement.** This Agreement constitutes the full and entire understanding between the parties regarding the subject matter hereof, there being no others oral or written. This Agreement shall not be amended or supplemented except by a writing signed by all parties hereto.

Marjam Supply Co., Inc.
Employer

By: _____
Authorized Officer


_Everett Rikeman_
Employee

Name: Everett Rikeman

SS# ███████████

Date of Birth: 7/7/59

Starting Date: 9/21/01

Exhibit B

**Subject: Fw: Confidential: resignation letter**
  **Date:** Mon, 14 Feb 2005 19:24:33 +0000 GMT
  **From:** "Mark Buller" <mbuller@marjam.com>
    **To:** Cfhoughton@cfhlawoffice.com

```
Fyi
------Original Message------
From: Mark Buller
To: null
ReplyTo: Patrick McDonough
Subject: Confidential: resignation letter
```

This is to inform you my last day of employment will be Tuesday, February 8, 2005. While I have enjoyed my employment at Marjam this was a difficult decision but had to be made. I would like to be contacted for an exit interview regarding my voluntary termination.  I can be reached at (781)438-2353.

Thank you for the opportunity.  I look forward to hearing from you.

Regards,


Everett Rikeman
Inside Sales NH & MA



Sent via BlackBerry from T-Mobile.

*Charles J. Houghton*  
*Attorney~At~Law*

Exhibit C

271 Main Street - Suite 202, Stoneham, Massachusetts 02180  
Telephone: (781) 438-7444  Fax: (781) 438-2078

Mark E. Mulligan  
Attorney

Arlene J. Fothergill  
Attorney

Mary Ann Marrocco  
Paralegal

Maria D'Alelio  
Paralegal

March 7, 2005

<u>Certified Mail - Return Receipt</u>

Mr. Everett Rikeman  
31 Pine Street  
Stoneham, MA 02180

Re: Marjam Supply Company

Dear Mr. Rikeman:

Please be advised that this office represents Marjam Supply Company ("Marjam"). As a condition of your original employment with Marjam you executed the Employment Agreement dated September 21, 2001 and attached hereto.

Paragraph 6 of the Employment Agreement reads:

"Mr. Rikeman [sic] shall not, for a period of one (1) year following termination of employment, for any reason, directly or indirectly, represent or attempt to represent any customer of Marjam [sic] within a 45 mile radius of the marketing and sales area(s) Mr. Rikeman [sic] sold, operated and/or otherwise conducted business for Marjam [sic] throughout the term of the employment hereunder ("Restricted Area"). Mr. Rikeman [sic] further agrees that he shall not compete with the activities of Marjam [sic] either directly or indirectly as a principal, partner, agent, or Employee of any entity operating a business similar to that which is being conducted by Marjam [sic], for a period of one (1) year following his/her termination of employment, for any reason, within the Restricted Area.

In order to protect its legitimate business interests Marjam hereby demands that you refrain until February 8, 2006 from working with any and all Marjam customers with whom you had contact in the course of your employment with Marjam. Until said Date you are further barred from competing with Marjam by using information obtained as a Marjam employee. Lastly Marjam is hereby requesting that you return all documents, including copies, pertaining to Marjam that are in your possession or to which you have access by March 11, 2005.

Please contact me to arrange returning said documents and to confirm your agreement to abide by the Employment Agreement as I have detailed it herein. Should you fail to do so Marjam will initiate legal action against you.

Sincerely,

Charles F. Houghton

Enclosure

Cc:   Mark Buller

2