UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARJAM SUPPLY COMPANY, INC.,<br>    Plaintiff<br><br>v.<br><br>EVERETT RIKEMAN,<br>    Defendant | Civil Action No. 05 10570 RWZ |

## MEMORANDUM OF DEFENDANT EVERETT RIKEMAN IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

I.   STATEMENT OF THE CASE

Plaintiff Marjam Supply Company, Inc. ("Marjam") sued its former employee, Defendant Everett Rikeman ("Rikeman"), seeking to enforce a noncompetition agreement allegedly signed by Rikeman. Marjam also filed an Emergency Motion For A Preliminary Injunction ("Emergency Motion").

This is Defendant Rikeman's Memorandum in Opposition to the Plaintiff's Emergency Motion.

II.   STATEMENT OF THE FACTS

The Defendant Everett Rikeman worked for the Plaintiff Marjam for less than three and a half of his almost twenty-five years in the business of selling construction materials (principally acoustical ceiling supplies). Affidavit of Everett Rikeman ("Rikeman Aff."), ¶3. Rikeman recently left Marjam to return to work for Kamco Supply Corp. of Boston ("Kamco"), the company for which he worked his first twenty years in the business. *Id.*, ¶s 4, 5, and 20. Rikeman left Marjam to return to his former employer for reasons wholly unrelated to the allegations of misconduct alleged by Marjam in its

Verified Complaint. *Id.*, ¶ 20; see also, Verified Complaint, ¶s 16, 19 and 22. Rikeman also specifically denies taking any confidential information or trade secrets from Marjam, or misappropriating any customer goodwill belonging to Marjam. Rikeman Aff., ¶s 1, 2, 18, 19, and 21.

Rikeman's duties as a salesman of building supplies mainly involve talking on the telephone to customers and vendors. Rikeman Aff., ¶ 8. Marjam and Kamco are both authorized distributors of Armstrong brand building supplies and share many of the same customers. Rikeman Aff., ¶s 9 and 12. The business is such that the identity and pricing of the various entities involved are not secret. *Id.*, ¶s 9 – 13. Rikeman started in the business right out of high school, as a truck driver and warehouse worker, and soon worked his way up to salesman. *Id.*, ¶s 4-5. Rikeman has no specialized education, training or knowledge, *Id.*, ¶ 23, and Plaintiff Marjam does not allege in its Verified Complaint or Motion papers that Rikeman is in any way "unique" as an employee.

Rikeman does not remember receiving, discussing, or signing the Employment Agreement relied upon by Marjam. *Id.*, ¶ 14. Marjam did not tell Rikeman anything about a non-competition covenant, and Rikeman did not intentionally give Marjam such a document. *Id.*, ¶s 15 – 16.

III.  ARGUMENT

    A.  <u>MARJAM CANNOT ENFORCE A RESTRICTIVE COVENANT AGAINST RIKEMAN PURSUANT TO THE APPLICABLE LAW OF NEW YORK</u>

Marjam's Memorandum in Support of Plaintiff's Emergency Motion, p. 3, asserts that Marjam is likely to succeed on the merits, but cites exclusively to two cases applying Massachusetts law regarding non-competition agreements. However, the Employment

Agreement relied upon by Marjam, which contains a non-competition covenant, clearly states that New York law governs the Employment Agreement "in all respects". Plaintiff's Verified Complaint, ¶13 and Exhibit A ("9. <u>Governing Law.</u> This agreement shall be in all respects governed by and construed and enforced in accordance with the laws of the State of New York."). Applying New York law to the facts of this case leads to non-enforcement of Marjam's restrictive covenant.[1]

Under New York law, a noncompetition covenant will only be enforced against a former employee to protect the employer from disclosure of trade secrets or confidential customer lists, or where the employee is unique. *Reed, Roberts Assoc., Inc. v. Strauman,* 40 N.Y.2d 303, 353 N.E.2d 590, 386 N.Y.S.2d 677 (1976). In contrast, a noncompetition covenant in a contract to sell a business will also be enforced to protect goodwill. *Id.,* 40 N.Y.2d at 303. See also *Columbia Ribbon & Carbon Mfg. V. A-I-A Corp.,* 42 N.Y.2d 496, 369 N.E.2d 4, 398 N.Y.S.2d 1004 (1977). Judicial disfavor of noncompetition covenants in New York reflects "powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood." *Id.,* quoting *Purchasing Assoc. v. Weitz,* 13 N.Y.2d 267, 272, 246 N.Y.S.2d 600, 604, 196 N.E.2d 245, 247.

In this case, Marjam appears to be arguing that either its goodwill or confidential pricing information should be protected. See, e.g., Plaintiff's Emergency Motion, ¶ 3.[2] As noted above, New York law holds that goodwill is not a sufficient interest to justify granting injunctive relief against an employee on behalf of an employer. *Telectronics,*

---

[1] As is discussed in Section III.B, below, enforcement should be denied applying Massachusetts law as well.

[2] No allegation is made, for example, that Rikeman's services were "special, unique or extraordinary", so as to justify a restrictive covenant. *Purchasing Assocs., Inc. v. Weitz,* 13 N.Y.2d 267, 274, 246 N.Y.S.2d 600, 605, 196 N.E.2d 245, 249 (1963).

*Inc. v. Downing*, 1987 WL 9904 (D. Mass.)(Zobel, J.). Certainly, customer lists are not considered to be confidential where, as here, past or prospective customers are readily ascertainable from sources outside the employer's business. *Id.; American Institute of Chemical Engineers v. Reber-Friel Co.*, 682 F.2d 382 (2d Cir. 1982) (applying New York law); see also, Rikeman Aff., ¶s 11-12. Indeed, Marjam and Kamco share many of the same contractors as customers, and the contractors often initiate sales contact, by soliciting bids from more than one distributor. Rikeman Aff., ¶ 12. Accordingly, no reason exists to grant the requested relief that would prevent Rikeman from contacting any customers with whom he had had contact while at Marjam.[3]

Marjam has similarly not demonstrated in any way that it should be protected against usage by Rikeman of confidential pricing information. Plaintiff's Verified Complaint, ¶ 12, alleges only that Rikeman "was *privy* to confidential information regarding customers and vendors including but not limited to individually negotiated pricing levels" (emphasis added). As to use of such information, the Verified Complaint, ¶ 22, merely speculates "[u]pon information and belief" that Rikeman will compete with Marjam ' by relying on Marjam's ... confidential information." The nature of the supposedly confidential information is not divulged or further explained, although the Plaintiff's requested injunction and Motion papers suggest that Marjam's real concern regards "vendor pricing". Verified Complaint, Prayers for Relief, ¶ 2 (request for injunction to prevent Defendant from "utilizing confidential information in dealing with

---

[3] Even assuming protection of goodwill would theoretically support grant of a preliminary injunction in this situation under New York law, Marjam has not sustained any showing that Rikeman seeks to profit from goodwill *belonging to Marjam*. *American Institute of Chemical Engineers v. Reber-Friel*, 682 F.2d at 389. Rikeman sold building supplies for over twenty years before ever working for Marjam, and thus brought with him to Marjam "much of the goodwill for which the enterprise is seeking protection". *Id.*, at 389-90.

Marjam's vendors"); Plaintiff's Memorandum, p. 4 (Marjam asking Court to prevent Defendant "from utilizing confidential vendor pricing information"). Significantly, Marjam does not provide even one specific example of any instance where it believes Rikeman actually did either possess such confidential information, or misappropriate such information. By contrast, Rikeman's Affidavit explains that vendor pricing information is in no way a secret, or even necessarily determinative of a customer's decision as to where to place any particular order. Rikeman Aff., ¶s 8 - 13. Marjam and Kamco are both authorized distributors of "Armstrong" brand acoustical ceiling supplies, which are the principal supplies that Rikeman sells. As authorized dealers, "Armstrong's building supplies are made available equally to Kamco and Marjam, at the same prices." *Id.* As a result of this equal availability, as well as the competitive bidding that is common in the industry, pricing from vendors and to customers is fairly standard and open

Moreover, contractors often solicit bids from both Kamco and Marjam, and decide where to place their order based on considerations that have nothing to do with the identity of the salesperson, such as delivery availability, credit terms and return policies. Rikeman Aff., ¶ 12-13. Accordingly, Marjam's request for injunctive relief would do violence to "the general public policy favoring robust and uninhibited competition", not to mention "powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood." *Purchasing Assocs., Inc. v. Weitz*, 13 N.Y.2d at 272. Thus, no relief need be granted Marjam concerning its allegedly confidential vendor pricing.

B.  MARJAM COULD NOT ENFORCE A RESTRICTIVE COVENANT AGAINST RIKEMAN EVEN APPLYING MASSACHUSETTS LAW

As is evident from the two Massachusetts non-competition cases cited by Marjam in its supporting Memorandum, denial of enforcement of the non-competition covenant herein would be the proper result even under the reasoning of the Massachusetts case law cited by Marjam.

In *New England Canteen Service, Inc. v. Ashley,* 372 Mass. 671, 363 N.E.2d 526 (1977), the Supreme Judicial Court ("SJC") upheld the Superior Court's dismissal of a Complaint which, as herein, sought injunctive relief and damages based upon noncompetition covenants. The Defendants there had sold food items prepared by the Plaintiff, "from trucks bearing the Plaintiff's insignia at prices determined by the plaintiff," and at locations furnished by the plaintiff. 372 Mass. at 672, 363 N.E.2d at 527. The Defendants had also signed contracts with the Plaintiff, each of which "purported to put the defendant under certain competitive restraints in the event of the termination of the relationship." *Id.* The facts in that case, then, were if anything *more* supportive of granting an injunction than are present herein.

In denying enforcement of the restrictive covenants, both the trial court and SJC ruled that "there were no trade secrets or business methods unique to the business of the plaintiff involved and that '(w)hatever good will exists (was) generated by the defendant.'" 372 Mass. at 673 and 675, 363 N.E.2d at 528-529.
There, as here, the plaintiff had not generated the goodwill interest for which it sought judicial protection, and thus the defendant's actions "did not interfere with any goodwill interest legally attributable to the plaintiff. On the state of the record before us, the

plaintiff's purpose in attempting to enforce the covenant is to protect itself from ordinary competition. This it cannot do." 372 Mass. at 676, 363 N.E.2d at 529.

In *Ikon Office Solutions, Inc. v. Belanger*, 59 F.Supp.2d 125 (1999), the Court also declined to preliminary enjoin a former employee pursuant to a restrictive covenant. The Court critically examined the covenant advanced by the plaintiff IKON, "which, after all, was drafted by IKON", finding the "customer specific" restriction to be particularly worrisome, given that it could be interpreted to "erase" relationships created prior to the existence of any restrictive covenant. 59 F.Supp.2d at 129. The Court also found that "the covenants do not appear to have been supported by any consideration." *Id.*, at 130. Surveying the case law, the Court noted that "the courts now appear to refuse to enforce non-competition and non-solicitation agreements when the only purported consideration is the employee's continued employment," particularly with agreements that had not been negotiated and were presented to the employee on a "take it or leave it" basis. *Id.*, at 131.[4] The same considerations as were present to deny enforcement in *IKON* are present herein: i.e., resort to a "contract of adhesion", drafted by an overreaching employer and given without sufficient consideration, in an attempt to stifle ordinary competition. Accordingly, both of the only two non-competition cases cited by Marjam actually support denial of the requested injunctive relief, even were Massachusetts rather than New York law applicable.

---

[4] In this respect it is noteworthy that Marjam drafted the noncompete at issue herein and apparently presented it to Rikeman without any discussion whatsoever, much less negotiation or additional consideration. *Rikeman was not even aware until after his employment with Marjam terminated that Marjam alleges he had signed such a covenant.* Rikeman Aff., ¶ 14-16.

IV.     CONCLUSION

For the foregoing reasons, Defendant Everett Rikeman respectfully requests that this Court DENY the Plaintiff's Emergency Motion For A Preliminary Injunction.

                                      DEFENDANT EVERETT RIKEMAN,
                                      By his attorneys,

                                      Robert W. Hurwitz, BBO # 245810
                                      Eugene R. Richard, BBO # 546781
                                      WAYNE, RICHARD & HURWITZ LLP
                                      One Boston Place, Suite 3620
                                      Boston, MA  02108

Dated: April 6, 2005                (617) 720-7870

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon each party appearing pro se and the attorney of record for each other party by mail (by hand) on 4/6/05